# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SNH MEDICAL OFFICE PROPERTIES TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-1782 (ABJ) |
| HEALTHY EATERIES L.L.C., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff, SNH Medical Office Properties Trust ("SNH"), brought this action against defendant, Healthy Eateries L.L.C. dba MASO ("Healthy Eateries"), for breach of contract. Compl. [Dkt. # 1]. Plaintiff alleges that defendant owes plaintiff money under the terms of a lease of commercial real estate. *Id.* ¶¶ 5–14.

The Clerk of Court entered a default in this case on October 12, 2017, *see* Clerk's Entry of Default [Dkt. # 6], and plaintiff has filed a motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55. Pl.'s Mot. for Default J. [Dkt. # 7] ("Pl.'s Mot."); Pl.'s Mem. in Supp. of Pl.'s Mot. [Dkt. # 8] ("Pl.'s Mem."). Plaintiff seeks a judgment in the amount of $1,130,387.80, with interest and attorneys' fees and costs. Pl.'s Mem. at 1, 6.

Having considered plaintiff's submissions and applicable case law, the Court will grant plaintiff's motion for default judgment. However, because the record does not contain sufficient information on damages and attorneys' fees, plaintiff is hereby ordered to provide more information to support its claim.

## BACKGROUND

On December 4, 2012, plaintiff and defendant entered into a ten-year leasing agreement for commercial real estate located at 1145 19th Street, N.W., Suite 101, Washington, D.C. Compl. ¶ 5; Ex. A to Compl. [Dkt. # 1-1] ("Lease").

Under the terms of the Lease, defendant agreed to pay a fixed amount of rent per year in monthly installments. *See* Lease ¶¶ 1.1; 4.1. Table 1 lists the agreed fixed annual rent and the corresponding monthly installments during the term of the Lease, which was supposed to run until July 31, 2023.

Table 1 Rent agreement

| Year | Annual Fixed Rent | Monthly Installments |
|------|-------------------|----------------------|
| 1    | $117,000.00       | $9,750.00            |
| 2    | $120,510.00       | $10,042.50           |
| 3    | $124,125.30       | $10,343.78           |
| 4    | $127,849.06       | $10,654.09           |
| 5    | $131,684.53       | $10,973.71           |
| 6    | $135,635.07       | $11,302.92           |
| 7    | $139,704.12       | $11,642.01           |
| 8    | $143,895.24       | $11,991.27           |
| 9    | $148,212.10       | $12,351.01           |
| 10   | $152,658.46       | $12,721.54           |

*Id.*

Defendant also agreed to pay plaintiff "Additional Rent" consisting of a percentage of the real estate taxes on the property, Lease ¶ 4.2.1., and the landlord's "Operating Costs." *Id.* ¶ 4.2. "Operating Costs" were to include "all costs and expenses paid or incurred for the operation, cleaning, management, maintenance, insurance, repair, replacement, decoration, upkeep, protection and security of the [leased p]roperty." *Id.* ¶ 4.2.2.

In the event of a late rent payment, the Lease provides that the tenant shall pay "interest (as Additional Rent) from the date due until the date paid" at "a rate . . . equal to the lesser of 6% over the Prime Rate or the maximum rate allowed by law." Lease ¶¶ 4.6, 8.4. If the rent is overdue

for more than five days, "[defendant] shall pay [plaintiff] a late charge equal to the greater of One Hundred Dollars ($100) or ten percent (10%) of the delinquent amount." *Id.* ¶ 4.6.

Finally, the Lease states that should the tenant default on its obligations to pay the annual fixed rent or additional rent when due, the landlord may terminate the Lease. Lease ¶ 8.1. Paragraph 8.2 of the Lease specifies the landlord's remedies following termination. Under this provision, the tenant is liable for any unpaid obligation as well as "the Annual Fixed Rent, Additional Rent and other charges which would be payable . . . for the remainder of the term of this Lease had such termination not occurred," regardless of "whether or not the Premises shall have been re-let." *Id.* ¶ 8.2.

In other words, defendant agreed to be liable for the *full* amount of the annual fixed rent and "additional rent" for the ten-year lease period, even after the Lease is terminated and regardless of whether the premises are leased to another tenant or not. *Id.* Additionally, the tenant is responsible for "reasonable attorneys fees, together with interest thereon at a rate . . . equal to the lesser of 6% over the Prime Rate or the maximum rate allowed by law." *Id.* ¶ 8.4.[1]

On June 2, 2017, approximately four years into the ten-year lease, Healthy Eateries' managing member, Giuseppe Della Torre, informed plaintiff via email that it was closing the

---

1   When defendant first entered the Lease, it agreed to operate the premises as a franchise of Nature's Table Franchise Company under the trade name "Nature's Table." Compl. ¶ 6. Subsequently, Nature's Table Franchise Company terminated the franchise agreement with Healthy Eateries. *Id.* ¶ 7. So on January 20, 2015, plaintiff and defendant signed the "First Amendment to Lease" to reflect that defendant had ceased operating the premises as a Nature's Table franchise. Compl. ¶¶ 8–9; Ex. B to Compl. [Dkt. # 1-2] ("First Amendment to Lease"). The First Amendment to Lease preserved the original Lease but required defendant to operate the premises under the trade name "MASO." *See* First Amendment to Lease ¶ 4. The First Amendment to Lease also acknowledged that defendant was in arrears for a total amount of $41,530.41 and that defendant agreed to pay plaintiff an additional $2,307.25 per month until the past due amounts were paid in full. *Id.* ¶ 2; Compl. ¶ 8.

3

business that same day. Compl. ¶ 10; Ex. C to Compl. [Dkt. # 1-3]. Plaintiff responded on June 12, 2017, with a letter to defendant acknowledging the closing of defendant's business while advising it that "Tenant's failure to operate the business or occupy the leased premises shall not relieve [it] of any of its obligations under the Lease, including . . . its obligation to pay rent through the Expiration Date," which ran until July 31, 2023. Compl. ¶ 11; Ex. D to Compl. [Dkt. # 1-4].

On July 18, 2017, plaintiff officially terminated the Lease with defendant. Compl. ¶ 12; Ex. E to Compl. [Dkt. # 1-5]. The termination letter states that "[p]ursuant to Paragraph 8.1 of the Lease, all of Tenant's right and privileges under the Lease shall expire and terminate" and "Tenant remains liable to Landlord for all amounts outlined in Paragraph 8.2 of the Lease." Ex. E.

Plaintiff filed this lawsuit on August 31, 2017, seeking to collect the amount due and owing under the Lease with interest and attorneys' fees and costs. Compl. ¶¶ 13, 20; Prayer of Relief, *id.* at 4. On September 13, 2017, the summons and complaint were served on defendant's registered agent, attorney Jane Rogers, in accordance with Federal Rules of Civil Procedure 4(c) and 4(h)(1). *See* Aff. of Service [Dkt. # 4]. Defendant failed to file an answer or otherwise respond to plaintiff's complaint, so plaintiff filed a request for entry of default to the Clerk of Court on October 11, 2017, Pl.'s Req. for Entry of Default [Dkt. # 5], and the Clerk of Court entered default against defendant on October 12, 2017. Clerk's Entry of Default. Plaintiff then filed this motion for default judgment on October 23, 2017. Pl.'s Mot.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55(a) provides that the Clerk of Court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default has been entered, a court may enter a default judgment order pursuant to Rule 55(b).

Whether default judgment is appropriate is in the discretion of the trial court. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Upon entry of default by the Clerk of Court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.*, citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* (citation omitted). "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* (citation omitted).

## ANALYSIS

**I.  Plaintiff is entitled to default judgment for breach of contract.**

Given "the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense," the Court concludes that default judgment is appropriate in this case. *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC,* 531 F. Supp. 2d 56, 57 (D.D.C. 2008), quoting *Gutierrez v. Berg Contracting Inc.*, No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000). The Clerk of Court has already entered defendant's default, so the factual allegations in the complaint are therefore taken as true. *See R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30.

To state a claim for breach of contract, a party must establish: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4)

damages caused by [the] breach." *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013), quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). The Court finds that plaintiff's complaint and exhibits sufficiently allege facts to support its claim for breach of contract, and therefore, plaintiff is entitled to default judgment on the question of defendant's liability for failing to pay amounts due under the terms of the Lease.

**II.     Plaintiff must submit more information to support its damages amount.**

Plaintiff has requested that the Court order defendant to pay $1,130,358.80 in damages directly caused by defendant's breach of the Lease. Pl.'s Mem. at 1. While plaintiff has established its entitlement to judgment on the breach of contract claim, it has not yet supplied sufficient information for the Court to make the necessary determination on the amount of damages owed. Although a plaintiff is not required to prove damages "with mathematical certainty," he must proffer "some reasonable basis on which to estimate damages." *Garcia v. Llerena*, 599 A.2d 1138, 1142 (D.C. 1991); *see Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 833 (D.C. 1972) ("[District of Columbia] law also requires that any damages claimed must be proved with reasonable certainty."). "If [the plaintiff] establishes breach of contract, but fails to demonstrate actual damages or its proof of damages is vague or speculative, [then] the party is entitled to no more than nominal damages." *Window Specialists, Inc. v. Forney Enters., Inc.*, 106 F. Supp. 3d 64, 92 (D.D.C. 2015).

To establish the amount of damages owed in this case, plaintiff offers a copy of the "Aging Detail," Ex. F to Compl. [Dkt. # 1-6], and a copy of its late fees and the interest calculations. Ex. G to Compl. [Dkt. # 1-7]. The damages calculation includes the expected charges for the remaining lease period between June 1, 2017 through July 1, 2023, categorized as base rent,

6

estimated operating expenses, estimated real estate tax, security, late fees, and interest. *See* Exs. F, G. Table 2 lists the requested sum for each category.

Table 2 Requested Damages

| Charges | Amount |
|---|---|
| Base Rent | $871,511.10 |
| "Estimated" Operating Costs | $152,561.96 |
| "Estimated" Real Estate Tax | $92,937.03 |
| Security | $3,700.00 |
| Late Fees | $3,757.13 |
| Interest | $530.99 |

Pl.'s Mem. at 1; Ex. G at 10.

Plaintiff also provides the declaration of SNH's Regional Vice President, William S. Stevens, who avers that these figures are "correct" with no further explanation. Decl. of William S. Stevens in Supp. of Mot. for Default J. [Dkt. # 8-2] ¶ 3.

While the base rent, the late fee, and the interest amounts seem to be correct based on the Lease agreement between the parties, the Court has no reference point to determine the reasonableness of the operating costs, the real estate tax, and the security expenses[2] other than Stevens' conclusory declaration. That is simply not enough. Neither the complaint nor the affidavit explain plaintiff's method for estimating such charges, and there are no copies of past bills or real estate tax records from the premises to demonstrate that the projected costs are reasonable. The "Operating Costs" include "all costs and expenses paid or incurred for the operation, cleaning, management, maintenance, insurance, repair, replacement, decoration,

---

2    The Court notes that the "Operating Costs" might already include security-related expenses. Lease ¶ 4.2.2 ("'Operating Costs' shall be all costs and expenses paid or incurred for the operation, . . . protection and security of the Property or any part or component thereof.").

7

upkeep, protection and security of the Property," Lease ¶ 4.2.2, but plaintiff has not supplied any evidence detailing amounts paid for these expenses in previous years.

Because the Court cannot determine the amount of damages owed based on plaintiff's unsubstantiated "estimates," plaintiff is hereby ordered to provide more information to support its claimed damages.

## III. Plaintiff must submit more information before the Court orders an award of attorneys' fees and costs.

Plaintiff has also requested that the Court order defendant to pay $4,862.00 in attorneys' fees and $527.59 for costs associated with this case. Pl.'s Mem. at 6. The Lease provides that the tenant shall pay the landlord "reasonable attorneys['] fees, together with interest thereon at a rate . . . equal to the lesser of 6% over the Prime Rate or the maximum rate allowed by law." Lease ¶ 8.4.

"The reasonableness of the fees requested by the [plaintiff] is a 'judgment call' which only the [c]ourt can make." *Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 475 (D.D.C. 1984). Reasonable attorneys' fees are calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984), citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see Wilcox v. Sisson*, No. 02-1455(RMC), 2006 WL 1443981, at *3–7 (D.D.C. May 25, 2006) (applying this standard in calculating attorneys' fees in a breach of contract claim). When preparing a fee application, plaintiff must provide the Court with "sufficiently detailed information about the hours logged and the work done . . . based on contemporaneous time records" in order to justify the hours expended. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). And the reasonableness of the hourly rate is determined by referencing the "prevailing market rates in

the relevant community," *Blum*, 465 U.S. at 895, and producing "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Id*. at 895 n.11.

To establish the amount of fees and costs owed in this case, plaintiff offers the declaration of its attorney, Kenneth M. Misken. Decl. of. Kenneth M. Misken in Supp. of Award of Att'ys' Fees and Costs ("Misken Decl.") [Dkt. # 8-3]. The declaration includes billing records listing the hours expended by each attorney for each task performed in the present case. Ex. A to Misken Decl. [Dkt. # 8-3] ("Billing Records"). It also provides the hourly rates for principals and associates and each biller's legal education. Misken Decl. ¶¶ 2–3.

Based on the billing records provided by plaintiff, the Court determines that 4.6 hours were billed at the principal rate of $500 per hour by attorney Kenneth M. Misken and 3.6 hours were billed at the associate rate of $295 per hour by Craig Hoovler. Billing Records. This adds up to $3,362.00 in attorneys' fees, not the $4,862.00 plaintiff seeks. This discrepancy can be explained by the fact that Misken added 3.0 hours "of [his] time to compensate [plaintiff] for the drafting of the motion, memorandum and declarations." Misken Decl. ¶ 1 n.1. In other words, Misken did not perform those three hours of work but charged as if he did. So the Court does not know which, if any, attorney at SNH performed that work, and why the $500 per hour rate would be reasonable.

Moreover, while the contemporaneous time records provide enough information regarding the hours expended by attorneys Misken and Hoovler, the Court has no reference point to determine the reasonableness of their hourly rates. The Misken affidavit merely states the law schools the attorneys attended and their graduation years, but provides no further information in order to inform a comparison to the prevailing market rates. The affidavit also fails to point to additional evidence of prevailing market rates such as the *Laffey* Matrix or the U.S. Attorney's Office Matrix, which the D.C. Circuit has "previously said litigants may rely upon when seeking

9

fees." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). Absent such information, the Court cannot ascertain whether the proposed hourly rates are reasonable for the attorneys involved.

Accordingly, before the Court awards plaintiff his requested attorneys' fees, plaintiff must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community" for attorneys, paralegals, and law clerks involved in contract dispute litigation. *See Blum*, 465 U.S. at 895 n.11.

## CONCLUSION

For the reasons stated, and pursuant to Federal Rule of Civil Procedure 55, the Court hereby grants plaintiff's motion [Dkt. # 7] for default judgment against defendant Healthy Eateries L.L.C. However, plaintiff must file by May 10, 2018, an additional submission to substantiate its damages claim and the reasonableness of its attorneys' fees.

SO ORDERED.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: April 26, 2018